IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE.
August 27, 2024 Session

## STATE OF TENNESSEE v. STEVEN ALEXANDER GREENE

**Appeal from the Circuit Court for Blount County**
**No. C-27785   Tammy Harrington, Judge**

_____

### No. E2023-01727-CCA-R3-CD
_____

The Defendant, Steven Alexander Greene, pleaded guilty to second degree murder, a Class A felony, especially aggravated robbery, a Class A felony, especially aggravated burglary, a Class B felony, and tampering with evidence, a Class C felony. *See* T.C.A. §§ 39-13-210 (2018) (second degree murder), 39-13-403 (2018) (especially aggravated robbery), 39-14-404 (2018) (subsequently amended) (especially aggravated burglary), 39-16-503 (2018) (tampering with evidence). Pursuant to the plea agreement, the trial court was to determine the length of the sentences, and the court imposed an effective sentence of twenty-five years. On appeal, the Defendant contends that the trial court erred by applying the mitigating factors before applying the enhancement factors when imposing the Defendant's sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Rick Allen Owens, Maryville, Tennessee, for the Appellant, Steven A. Greene.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Ryan Desmond, District Attorney General; Scott Stuart, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant's convictions arose from his and Hiede Linton's, the codefendant's, actions on February 14, 2021, when the Defendant fatally shot John Willis in his home. The Defendant shot the victim in the face and neck with a shotgun and left the victim to die from his wounds. The Defendant pleaded guilty and agreed to cooperate with law enforcement by testifying to his codefendant's conduct related to the victim's death.

On May 5, 2023, the Defendant entered a best interest guilty plea to the conviction offenses and affirmed that he understood the terms of the plea agreement and the waiver of his rights. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

The State presented the following stipulated facts at the plea hearing. The victim was found dead in his apartment on February 16, 2021, after his girlfriend, the codefendant, called the police. The victim's home showed no signs of forced entry, and the home's surveillance tapes were deleted. The victim and the codefendant had been seen having a heated argument on February 13, 2021. The codefendant's cell phone data showed that a call had been placed on the morning of February 14, 2021, from her phone to Bennie Morgan. Mr. Morgan said he received a call from the Defendant during the morning of February 14. The Defendant asked if he could "lay low" at Mr. Morgan's home. The codefendant's phone's geolocation data showed that her phone was at Terry Bertrang's property on February 14. Mr. Bertrang said the Defendant dropped off a truck and left with the codefendant in her car. Mr. Bertrang stated that the Defendant asked him to clean a shotgun in the truck and to assist the Defendant in selling the shotgun. The Tennessee Bureau of Investigation seized the Defendant's truck and found the victim's blood inside. Mr. Bertrang said that the Defendant eventually retrieved the shotgun to sell it to someone. Mr. Bertrang went with the Defendant on a road trip shortly after the victim's death and heard the Defendant mutter incriminating statements about the victim's death in his sleep.

Justin Bernard contacted the Alcoa Police Department (APD) and said he had purchased a shotgun from the Defendant after the shooting. The APD traced the source of the shotgun that the Defendant sold to Mr. Bernard to the Defendant's estranged wife, Kimberly Roper. Ms. Roper told law enforcement that the Defendant no longer lived with her, that he had moved in with the codefendant, and that he assaulted Ms. Roper and took her shotgun after learning that Ms. Roper had contacted the victim. Text messages between Ms. Roper and the Defendant reflected that the Defendant and the codefendant were angry with the victim because he owed money to the codefendant and that the Defendant and the codefendant had a key to the victim's home. Jonathan Lett said that the Defendant tried to sell him some of the victim's property and that the Defendant admitted killing the victim.

The Defendant told the codefendant of the victim's death on February 14, 2021. She drove with the Defendant to gas station dumpsters to dispose of several items connected to the shooting. They also threw the victim's wallet, cell phone, and iPad into the Tennessee River.

At the sentencing hearing, the presentence report was received as an exhibit and reflected that the forty-four-year-old Defendant had a G.E.D. The Defendant asserted that he was having marital problems and was subletting a room from the codefendant at the

time of the offense. The Strong-R risk and needs assessment report reflected that the Defendant had a moderate risk of reoffending. The Defendant's guilty plea hearing transcript and the victim impact statements from the victim's sister and parents were received as exhibits. Certified copies of the Defendant's three prior violations of probation and his prior convictions for possession of marijuana, carrying a concealed weapon, felony possession of marijuana, and two felony thefts were received as exhibits.

APD Officer Jeff Parsons testified that he was the lead investigator for the case. Officer Parsons said that when the Defendant was arrested, he did not cooperate with the police but that the Defendant fully recounted the victim's death several years after his arrest, after the Defendant reached a cooperation agreement with the State. As part of the agreement, Officer Parsons interviewed the Defendant. The Defendant's statement generally mirrored the plea hearing's stipulated facts. Officer Parsons testified that the Defendant admitted entering the victim's residence, waiting for the victim to emerge from the bedroom, pointing the shotgun at the victim, yelling "Surprise Mother- - - - -," and shooting the victim twice. Officer Parsons confirmed that the Defendant provided information about Tyler Hudson which corroborated the Defendant's testimony and implicated the codefendant in the victim's death. Officer Parsons said the codefendant told the Defendant that the victim was at home on the night of the murder and that the codefendant provided the Defendant with the key to the victim's home. Detective Parsons testified that the codefendant accessed the victim's surveillance system and deleted surveillance footage.

The Defendant argued that the mitigating factor of acting under strong provocation should apply because of the potential that the victim would assist Ms. Roper in securing sole custody of the Defendant's children. *See* T.C.A. § 40-35-113(2) (2018) (subsequently amended). The Defendant asserted that the codefendant was the leader in the commission of the victim's murder because she initiated conversations about killing the victim and allowed the Defendant to overhear the victim talking to the Defendant's wife on the phone to inflame his emotions. *See id.* § 40-35-112(3). The Defendant contended that the mitigating factor for assisting law enforcement in uncovering offenses committed by another person should be given great weight because the codefendant's conviction could not have been secured without the Defendant's cooperation. *See id.* § 40-35-113(9). The Defendant argued that the proper method of sentencing was for the trial court to start at 20 years as the presumptive sentence, which is in the middle of the range of 15 to 25 years for a Class A Range I felony. *See* 40-35-112(a)(1). The Defendant said that the court should then "enhance upwards with any factors [the court] finds to be applied and to mitigate downward from there."

The State argued that the Defendant's actions did not justify applying the mitigating factor for assisting law enforcement in finding Tyler Hudson because Mr. Hudson declined to help the Defendant in the commission of the crime. The State conceded that the

Defendant assisted law enforcement in its prosecution of the codefendant but said that the mitigating factor should not be given great weight because the Defendant's plea agreement significantly lessened his sentencing exposure. The State argued that the mitigating factor for strong provocation should not apply because the Defendant had abandoned his wife and children when he learned about the possibility of the victim's calling the Department of Children's Services (DCS) to report the Defendant's actions. The State contended that the proposed DCS call might have been a strong provocation but was one of the Defendant's own making.

The State asserted that the sentencing enhancement factors for prior criminal history, failure to comply with the conditions of a sentence involving the release into the community, and employment of a firearm in the commission of a crime were all uncontroverted by the evidence. *See id.* § 40-35-114(1), (8), (9) (Supp. 2021) (subsequently amended). The State argued that the enhancement factor for treating the victim with exceptional cruelty should apply because the Defendant shot the victim at close range, by surprise, and left without obtaining medical treatment for the victim's wounds. *See id.* § 40-35-114(5). Additionally, the State insisted that the enhancement factor for being a leader in the commission of an offense applied because the Defendant went to kill the victim for personal reasons and used the codefendant to gain access to the victim's home. *See id.* § 40-35-114(2).

The trial court noted that the Defendant's plea agreement stipulated that the Defendant's sentences would run concurrently. The court said that the Defendant's second degree murder sentence would be served at 100%, his aggravated robbery conviction would be served at 85%, and he would be sentenced as a Range II offender for his tampering with evidence conviction.

The trial court stated that it had considered the evidence presented at the sentencing, motion, and guilty plea hearings. The court also said it considered the presentence report, the statistical information provided by the Administrative Office of the Courts, and the sentencing memoranda submitted by the parties.

The trial court applied the enhancement factor for a previous criminal history because of the Defendant's three felony and three misdemeanor convictions. *See id.* § 40-35-114(1). The court gave this enhancement factor great weight because the Defendant's prior convictions showed a long history of repetitive criminal behavior.

The trial court applied the enhancement factor for the Defendant's failure to comply with the conditions of a sentence involving the release into the community for his prior violations of probation. *See id.* § 40-35-114(8). The court gave this factor great weight because the Defendant had demonstrated that he was unable to comply with the conditions of community release.

The trial court applied the enhancement factor for the Defendant's possessing a firearm during the commission of the offenses. *See id.* § 40-35-114(9). The court found that the Defendant used a firearm in the commission of the offense and that elements of the Defendant's offenses did not require the use of a firearm. The court gave this enhancement factor great weight, noting that the Defendant both used and hid a firearm in his killing of the victim.

The trial court applied the enhancement factor for the Defendant's treating the victim with exceptional cruelty during the commission of the offense. *See id.* § 40-35-114(5). The court found that the Defendant shot the victim twice, and then left the victim alive and alone to bleed to death from his wounds. The court did not give this enhancement factor significant weight because of the Defendant's underlying convictions.

The trial court applied the mitigating factor for the Defendant's assisting law enforcement in uncovering offenses committed by other persons. *See id.* § 40-35-113(9). The court found that the Defendant cooperated and assisted the State in successfully prosecuting his codefendant. The court gave this mitigating factor great weight because the court found the Defendant's cooperation in securing the codefendant's conviction to be significant.

The trial court considered the Defendant's convictions stating that it "must start at 20 years on the Class A felonies." The court found that it had given

> "significant weight to the cooperation [and that factor] would obviously in the analysis take that down from 20 years and then [it had to] balance that with the employment of a firearm, the criminal convictions, the limited weight of the cruelty . . . and then the release in the community . . . factors."

The court decided that "after careful consideration that the just sentence in this case given the weight of all the factors would be 25 years" for both second degree murder and especially aggravated robbery. The court sentenced the Defendant to ten years for the especially aggravated burglary and the tampering with evidence convictions. All sentences were concurrent for an effective 25 years.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to

sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the result of the validated risk and needs assessment. T.C.A. §§ 40-35-103 (2018), -210 (2018) (subsequently amended); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2018).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

The Defendant's only claim on appeal pertains to the order in which the trial court applied the mitigating factors and enhancement factors when it determined the length of the Defendant's sentences. The Defendant does not challenge the court's findings on enhancement and mitigating factors. The court applied first the mitigating factor of the Defendant's cooperation and then balanced that with the enhancement factors. The Defendant argues that the "court erred by applying the mitigating and [enhancement] factors incorrectly by first mitigating downward from the presumptive 20 years for a Class A felony Range I conviction, and then enhancing upward to the maximum 25[-]year sentence." He relies on *State v. Arnett* to advance this claim. 49 S.W.3d 250, 257 (Tenn. 2001). In *Arnett,* our supreme court held that a sentencing court in Class A felonies "begins with the presumption that the defendant should receive a sentence in the midpoint of the range absent any enhancement or mitigating factors." *Id*. If a sentencing court "find[s] the presence of enhancement factors or mitigating factors, it must first 'enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors.'" *Id*. (citing T.C.A. § 40-35-210(d), (e)) (2000) (subsequently amended). However, the statutory language interpreted by our supreme court in *Arnett* was removed from the Code effective June 7, 2005. *See* 2005 Tenn. Pub. Acts 353. The relevant statutory provision for a sentencing court addressing enhancement and mitigating factors now provides that:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

*Id*. § 40-35-210(c)(1)-(2) (2018) (subsequently amended). A trial court when sentencing for a Class A felony is no longer required to begin at the midpoint of the range, nor is it required to consider and apply enhancement and mitigating factors in any particular order. *Id*.

The Defendant does not argue that the trial court abused its discretion in applying the mitigating and enhancement factors to the Defendant's sentences. The court's application of the mitigating factors before the enhancement factors does not invalidate the Defendant's sentences because the application of one set of factors before another is not dictated by the applicable Sentencing Act provisions or case law. *Id*. Additionally, the court considered the required materials in determining the Defendant's within-range sentence. The trial court's considered reasons are consistent with the purposes and principles of the Sentencing Act. The trial court did not abuse its discretion. *See Bise*, 380 S.W.3d at 707. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE